1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

| | |
|---|---|
| BARRY G. WEGER,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF SOCIAL AND HEALTH SERVICES;<br>THOMAS J. KINLEN, in his personal<br>capacity; CHERYL STRANGE, in her<br>personal capacity; MARYLOUISE JONES,<br>in her personal capacity,<br><br>　　　　　　　　Defendants. | CASE NO. C19-5961 RJB-DWC<br><br>ORDER DENYING, IN PART, AND<br>GRANTING, IN PART,<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

11
12
13
14
15
16
17
18
19
20
21
22
23
24

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 79. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Defendants' motion should be granted as to Plaintiff's claims made pursuant to Title II of the Americans with Disabilities Act and Rehabilitation Act, and denied as to the claims pursuant to 42 U.S.C. 1983 and various state laws.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.   RELEVANT FACTS AND PENDING MOTION

A. FACTS

    1.  Background

This matter arises out of the detention of Plaintiff, Barry Weger, at the Kitsap County Jail.  The facts are not disputed.  The four Defendants who bring this motion are all connected to the State of Washington, not the County.

On March 15, 2018, Mr. Weger, an amputee with one leg, was arrested for a suspected DUI and for failure to appear to a hearing for a previous suspected DUI.  Dkt. 89 at 3–4.  During both arrests Mr. Weger exhibited signed of extreme mental illness, including eating pumpkin pie with his hands during the traffic stop, having feces on the seat of his car, driving without a tire into a construction site, and saying that "God was in the back seat" so it will be okay and that "it will all be over soon."  Dkts. 43-1 and 43-7.  Mr. Weger was taken into custody and, while at the Kitsap County Jail, continued to exhibit signs of extreme mental illness.  He repeatedly was "covered in urine, feces, and food" and was placed in solitary confinement.  *See e.g.*, Dkts. 43-23, 43-24, and 43-25.  His situation was so extreme that medical staff denied him care because of the feces on his fingers and clothes.  Dkt. 43-35.  His inability to care for himself caused medical staff to fear that a wound on his amputated leg would develop gangrene.  *Id.*  On June 13, 2018, the Kitsap County District Court ordered that Mr. Weger be evaluated to determine whether he was competent to stand trial.  Dkt. 89 at 6.  The State of Washington then became involved.

    2.  State Involvement

On June 25, 2018, the Office of Forensic Mental Health Services ("OFMHS"), a state body whose duties include competency evaluations, sent Dr. Lezlie Pickett to evaluate Mr. Weger at the Kitsap County Jail.  Dkts. 81 and 82.  Dr. Pickett found that Mr. Weger lacked the capacity both to understand the proceedings against him and to assist in his own defense.  Dkt.

80 at 79.  Dr. Pickett recommended that Mr. Weger receive inpatient psychiatric treatment to restore his competency.  *Id.*  She also recommended that the court seek evaluation for civil commitment before Mr. Weger be released from jail or placed in a less restrictive placement.  *Id.* at 80.

At the time of Mr. Weger's evaluation, Western State Hospital ("WSH") had a waitlist of 220 individuals awaiting in-patient competency restoration.  Dkt 81.  A person may be expedited through the waitlist based on the Triage Consultation and Expedited Admissions process.  *Id.* at 6.  Based on triage procedures, Dr. Pickett found that Mr. Weger did not meet the criteria for expedited admission because he did not exhibit active suicidal intent or "the inability to meet basic needs that puts the individual's health at risk, such as not eating or drinking while housed at the jail."  Dkt. 82 at 3.

On July 9, 2018, OFMHS referred Mr. Weger to the Maple Lane Competency Restoration Program, but this referral was rescinded because jail officers reported aggressive behavior by Mr. Weger.  Dkt. 81 at 5.  The other facilities that provide competency restoration services are the Yakima Competency Restoration Center and Eastern State Hospital.  *See id.* at 2. Defendants assert that the Yakima Center was not equipped to provide the level of care Mr. Weger required and that Eastern State was not accepting patents from the west side of the state because of their own waitlist.  Dkt. 85.  Therefore, the only option for Mr. Weger was WSH. Dkt. 79.

Mr. Weger then waited at the Kitsap County Jail until August 15, 2018 when he was finally admitted to WSH, five months after his arrest on March 15, 2018.  Dkt. 89 at 4.

3.   The State Defendants

DSHS oversees and operates state psychiatric hospitals, including WSH and its Center for Forensic Evaluation ("CFE").  Dkt. 75 at 2.  CFE is the unit that admits patients awaiting

1   forensic evaluation and competency restoration services, and it is where Mr. Weger was

2   eventually sent.  *See id.*  Although DSHS runs WSH, it does not decide its capacity.  That is

3   decided by the Washington State legislature.  Dkt. 75 at 10.

4          Dr. Kinlen is the Director of OFMHS, which operates forensic services in the State of

5   Washington.  Dkt. 81 at 2.  Dr. Kinlen's responsibilities include working with admitting staff to

6   understand and implement the prioritization algorithm used for admission to competency

7   restoration services.  Dkts. 81 at 2–3.

8          Ms. Strange became the Secretary of DSHS in September 2017.  Dkt. 83.  As Secretary,

9   Ms. Strange supervises the assistant secretaries of several DSHS administrations, including the

10  Behavioral Health Administration.  *Id.*

11         Marylouise Jones was the Interim Chief Executive Officer of WSH from September 2017

12  through June 2018.  Dkt. 84.  In that role, Ms. Jones' oversaw all hospital programs and

13  treatments at WSH, including CFS.  Dkt. 84 at 2.

14         None of the individual Defendants had direct contact with Mr. Weger.

15     B.  PENDING MOTION

16         Defendants Washington State Department of Social and Health Services ("DSHS"),

17  Thomas J. Kinlen, Cheryl Strange, and Marylouise Jones move for summary judgment on

18  Plaintiff's Fourth and Fourteenth Amendment due process claims made pursuant to 42 U.S.C. §

19  1983, claims pursuant to Title II of the Americans with Disabilities Act and the Rehabilitation

20  Act, and various state law claims.  The Court will consider the claims in that order.

21

22

23

24

## II.   DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630.  Conclusory, non-specific

1   statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v.*

2   *National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

3   **B.  CLAIMS UNDER 42 U.S.C. § 1983 GENERALLY**

4   To state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct

5   complained of was committed by a person acting under color of state law, and (2) the conduct

6   deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the

7   United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels*

8   *v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged

9   wrong only if both elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.

10  1985), *cert. denied*, 478 U.S. 1020 (1986).

11  To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual

12  bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092

13  (9th Cir. 1980). Vague and conclusory allegations of official participation in a civil rights

14  violation are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d

15  266 (9th Cir. 1982).

16  **C.  FOURTEENTH AMENDMENT DUE PROCESS CLAIM**

17  Mr. Weger alleges that the individual Defendants, Defendants Strange, Kinlen, and Jones,

18  both unconstitutionally deprived him of the right to be free from an unreasonable ongoing

19  seizure and unconstitutionally delayed and denied him access to medical or mental health

20  services. Dkt. 1-2 at 37–38. DSHS is a not a defendant to this claim.

21  As a pretrial detainee, Mr. Weger's claims "are properly addressed under the due process

22  clause of the Fourteenth Amendment." *Trueblood v. Wash. State Dept. of Soc. and Health Serv.*,

23  822 F.3d 1037, 1043 (9th Cir. 2016). There are two potential standards used to analyze similar

24  claims under the Fourteenth Amendment. The "right to be provided safe conditions by hospital

administrators" is analyzed under the "professional judgment standard." *Ammons v. Wash. Dept. of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011).  Under that standard, "liability may be imposed for failure to provide safe conditions 'when the decision made by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982).  However, "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants,' must be evaluated under an objective deliberate indifference standard." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).  This objective standard requires a plaintiff show four elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.

Defendants reference both standards, but neither party argues that one standard applies over the other.  *See* Dkts. 79 and 94.  Mr. Weger offers the objective deliberate indifference standard, which appears to be more demanding, so the Court will base its analysis on that standard.  *See* Dkt. 89 at 10–11.

Defendants are individuals in supervisory positions, including policymakers.  They did not have direct contact with Mr. Weger and cannot be held responsible under § 1983 for any harm done to him by a subordinate employee on a theory of *respondeat superior*.  *Starr v. Baca*, 652 F.3d 1202, 1207.  They may, however, be held liable if they ratify the unconstitutional conduct of subordinates; fail to train, supervise, or control their subordinates; or adopt a policy

that shows "a reckless or callous indifference to the rights of others." *Id.* at 1205- 06 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  The relevant question here then is whether the facts asserted put Defendants "on actual or constructive notice that the policy or custom was substantially certain to result in harm to [detainees]." *Estate of Vela v. Cnty. of Monterey*, No. 16-2375, 2018 WL 4076317, at *7 (N.D. Cal. 2018) (citing *Castro v. Cnty. of Los Angeles*, 833 F.3d 1160, 1076–77 (9th Cir. 2016)).

Defendants rely heavily on the decision in *Peralta v. Dillard* to argue that Plaintiff cannot meet this deliberate indifference standard because Defendants Kinlen, Strange, and Jones did not have meaningful control over the Western State Hospital budget.  744 F.3d 1076 (9th Cir. 2014) (*en banc*).  In *Peralta*, the court held that a prison official sued for money damages under § 1983 may raise a lack of available resources as a defense.  *Id.*  The court emphasized that whether a state official acts with deliberate indifference depends upon constraints facing that official, including lack of resources.  *Id.* at 1082.

Defendants also emphasize the impact of the decision in *Trueblood v. Wash. State Dep't. of Soc. & Health Servs.*, to argue that injunctive action may be appropriate under such circumstances but retrospective damages are not and that, despite best efforts, "the number of patient beds simply could not keep up with demand."  101 F. Supp. 3d 1010 (W.D. Wash. 2015); Dkts. 79 at 5.  In *Trueblood*, the court found that DSHS failed to provide timely competency restoration services and that failure was prolonged, profound, and unconstitutional.  *See id.*  The court issued a permanent injunction requiring DSHS to provide court-ordered competency evaluations within 14 days and competency restoration services within seven days.  *Id.* Defendants emphasize that as a result of this decision, DSHS made reforms, including creating the OFMHS, creating two additional locked facilities to provide competency restoration with a joint capacity of 54 beds, and adding 15 beds at WSH and 30 beds at ESH.  Dkt. 79 at 4.

1   Defendants argue that the reforms and innovative practices were simply not enough to respond to

2   the profound mental health crisis and State budgetary deficiencies.  Dkt. 79.

3           Plaintiff, however, presents evidence that Defendants' policies and practices were

4   deliberately indifferent based on reasons other than lack of resources.  Plaintiff's expert David E.

5   Stewart offers multiple ways in which he asserts the policies and practices administered by the

6   individual Defendants ignored an obvious risk of harm to defendants waiting for competency

7   restoration.  Dkt. 70.  One policy he identifies is DSHS's use of an "algorithm that does not

8   prioritize severity of clinical presentation", opining that this failure "unnecessarily puts patients

9   at risk of serious risk of harm or even death".  *Id.* at 10–11.  He states that this deficiency "would

10  be obvious to any mental health coordinator exercising his or her professional judgment."  *Id.*

11  Another alleged deficiency is that there was an "established practice" of holding civilly

12  committed patients in Western State's Center for Forensic Services, a policy that "directly [took]

13  up space" that otherwise "would have been available for Mr. Weger and similarly situated

14  patients."  Dkt. 70 at 10.  Mr. Stewart's assessments neither depend on the budget, nor do they

15  require adding beds to state hospitals.  While Defendants may raise a lack-of-resources defense,

16  this defense does not preclude Plaintiff's claim.

17          Furthermore, Plaintiff traces these policies and practices to each of the individual

18  Defendants: to Defendant Strange as the final policy maker at DSHS, which runs the state

19  hospitals (Dkt. 83); to Dr. Kinlen for being "responsible for the policies and established practices

20  of the OFMHS," including the administration of competency evaluations, and for testifying that

21  the decision not to expedite Mr. Weger's admission for competency restoration complied with

22  official policies (Dkt. 90-3 at 11); and to Defendant Jones as interim CEO of WSH for being

23  responsible for the practices regarding the "waitlist" program for WSH and the "algorithm" used

24  to rank eligibility for admission (Dkt. 84).

ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9

1    Plaintiff, therefore, offers evidence supporting his allegations that the policies

2    implemented by the individual Defendants were deliberately indifferent to a clear risk of harm

3    that would result by keeping pretrial detainees with severe mental illness in jail.  Genuine issues

4    of material fact require that summary judgment on Plaintiff's claim under § 1983 be denied.

5    **D.  ADA AND RA CLAIM**

6        There is "no significant difference in analysis of the rights and obligations created by the

7    ADA and the Rehabilitation Act."  *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045

8    n.11 (9th Cir. 1999).

9        Title II reads, in relevant part: " [N]o qualified individual with a disability shall, *by*

10   *reason of such disability*, be excluded from participation in or be denied the benefits of the

11   services, programs, or activities of a public entity, or be subjected to discrimination by any such

12   entity."  42 U.S.C. § 12132 (emphasis added).

13       Section 504 of the RA reads, in relevant part: "No otherwise qualified individual with a

14   disability . . . shall, *solely by reason of her or his disability*, be excluded from the participation

15   in, be denied the benefits of, or be subjected to discrimination under any program or activity

16   receiving Federal financial assistance.  29 U.S.C. § 784(a) (emphasis added).

17       Therefore, both statutes "prohibit discrimination because of disability, not inadequate

18   treatment for disability."  *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010).  The

19   essential difference between the two is that § 504 extends the protections of Title II to programs

20   or activities receiving federal financial assistance.  *Luong v. Alameda Cnty.*, 2018 WL 2021244,

21   at *7 (N.D. Cal. 2018).  To establish a violation of both Title II of the ADA and the RA, a

22   plaintiff must prove (1) that he or she was a "qualified individual with a disability;" (2) who was

23   either excluded from participation in or denied the benefits of a public entity's services,

24   programs, or activities, or was otherwise discriminated against by the public entity; and (3) such

1    exclusion, denial of benefits, or discrimination was by reason of that disability.  *Id.*

2          Defendants argue that summary judgment of both claims is appropriate because "Plaintiff

3    cannot establish either that Mr. Weger was denied access to or the benefits of any DSHS service

4    or that delay in his admission for competency restoration services was "by reason of" his

5    disability.  Dkt. 79 at 21.

6          In the context of a Title II claim, delayed access may, under some circumstances, equate

7    to denial of access.  *See Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 1176, 1189–90 (E.D. Cal.

8    2015).  That delay, however, must be "reflective of discrimination."  *Frankeberger v. Starwood*

9    *Hotels and Resorts Worldwide, Inc.*, 2010 WL 2217871 (W.D. Wash. 2010).  The question here,

10   then is whether delay of Mr. Weger's entry into restorative treatment is reflective of intentional

11   discrimination by Defendants because of his disability.

12          While Mr. Weger received inadequate treatment for his disability, he does not provide

13   evidence that Defendants intentionally discriminated against him because of it.  Plaintiff does not

14   provide evidence either of disparate treatment, or of pretext behind Defendants' policies.  *See id.*

15   Furthermore, unlike the cases cited by Plaintiff, none of Defendants had direct contact with or

16   personal knowledge of Mr. Weger that could indicate personal discrimination contributed to the

17   failure to transfer him sooner.  *See Luong*, 2018 WL 2021244, at *9; *quoting Atayde*, 255 F.

18   Supp. 3d ("Plaintiff has alleged that all of the defendants had knowledge of decedent's disability

19   . . . ."); *Kiman*, 451 F.3d at 287 ("Given defendants' acknowledgment of plaintiff's serious

20   disability and his acknowledged need for these medications, plaintiff may have demonstrated a

21   triable issue of fact as to *whether some corrections officers and prison medical officials* failed to

22   provide him with access to his prescription medications in violation of Title II of the ADA")

23   (emphasis added).

24          Plaintiff fails to offer evidence to support the elements of these claims.  Accordingly,

1   Defendants' motion for summary judgment on the issue of Title II of the ADA and § 504 of the

2   RA should be granted.

3       **E. STATE LAW CLAIMS**

4       Defendants argue:

5       RCW 10.77.068(5) sets forth a bar to any cause of action initiated under state law
        related to the timeliness of competency evaluations or admission for inpatient
6       services related to competency to proceed or stand trial. This statute bars the
        plaintiff's alleged state law claims under the Washington Law Against
7       Discrimination (WLAD), negligence, outrage and negligent infliction of emotional
        distress.
8
9       Dkt. 79 at 22.

10      RCW 10.77.068(5), which is part of the statute governing performance targets for

11  competency to stand trial, reads:

12      (5) This section does not create any new entitlement or cause of action related to
        the timeliness of competency evaluations or admission for inpatient services related
13      to competency to proceed or stand trial, nor can it form the basis for contempt
        sanctions under chapter 7.21 RCW or a motion to dismiss criminal charges.

14      However, as Plaintiff argues in response, RCW 4.92.090 provides, "[t]he state of

15  Washington, whether acting in its governmental or proprietary capacity, shall be liable for

16  damages arising out of its tortious conduct to the same extent as if it were a private person or

17  corporation." "This statute is 'one of the broadest waivers of sovereign immunity in the country'

18  and makes the State presumptively liable for its alleged tortious conduct 'in all instances in

19  which the Legislature has *not* indicated otherwise.'" *H.B.H. v. State*, 429 P.3d 484, 497 (Wash.

20  2018) (quoting *Savage v. State*, 899 P.2d 1270 (Wash. 1995)). Consequently, while RCW

21  10.77.068(5) does not create a new cause of action, it "does not grant immunity to the defendants

22  from all existing state claims." *Willis v. Wash. State Dep't of Soc. & Health Servs.*, 2017 WL

23  4180416, at *7 (W.D. Wash. 2017).

24      Defendants, in reply, argue that Plaintiff cannot meet his burden on the merits on the state

ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 12

law tort of outrage and Washington Law Against Discrimination claims.  However, "[a]rguments cannot be raised properly for the first time on reply."  *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1171 (W.D. Wash. 2010).  Having failed to properly raise these arguments, Defendants fail to show that Plaintiff cannot meet his burden at trial.  Defendants' motion for summary judgment on the state law claims should be denied.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- Defendants' Motion for Summary Judgment (Dkt. 79) is **GRANTED, IN PART, AND DENIED, IN PART**;
  - Plaintiff's claims pursuant to Title II of the ADA and the Rehabilitation Act are dismissed;
  - Plaintiff's claims pursuant to 42 U.S.C. § 1983 and his state law claims may proceed.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 25th day of January, 2021.

ROBERT J. BRYAN
United States District Judge